1  MARK LE COQ (*Pro Hac Vice* pending)
2  PATCHEN M HAGGERTY (*Pro Hac Vice* pending)
   **SCHWABE, WILLIAMSON & WYATT, P.C.**
3  Pacwest Center, Suites 1600-1900
   1211 S W Fifth Avenue
4  Portland, OR 97204-3795
5  Telephone  (503) 222-9981
   Fax  (503) 796-2900
6
7  ROBERT A. PADWAY (SBN 48439)
   MARCY J BERGMAN (SBN 75826)
8  CYRUS WADIA (SBN 190258)
   **COOPER, WHITE & COOPER LLP**
9  201 California Street, 17th Floor
   San Francisco, CA 94111
10 Telephone  (415) 433-1900
11 Fax  (415) 433-5530

12 Attorneys for Plaintiff
13
14              IN THE UNITED STATES DISTRICT COURT
15           FOR THE NORTHERN DISTRICT OF CALIFORNIA
16                    (SAN FRANCISCO DIVISION)



C 04 1674   BZ

| | |
|---|---|
| 18  **HERKEMIJ & PARTNERS KNOWLEDGE B.V.**, a Dutch Private Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>**ROSS SYSTEMS, INC.**, a Delaware Corporation; **ROSS SYSTEMS NEDERLAND B.V.**, a Dutch Private Limited Liability Company,<br><br>Defendants | No _____<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, AND UNFAIR COMPETITION<br><br>DEMAND FOR JURY TRIAL |

1

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, AND UNFAIR COMPETITION

## PARTIES

1. Plaintiff Herkemij & Partners Knowledge B V ("Herkemij") is a private limited liability company incorporated in The Netherlands with principal places of business in The Netherlands

2. Defendant Ross Systems, Inc. ("Ross Systems"), is a Delaware corporation having its principal place of business in the state of Georgia and conducting business in Redwood City, California

3. Defendant Ross Systems Nederland B V ("Ross Nederland"), a private limited liability company incorporated in The Netherlands, is a wholly owned subsidiary of Ross Systems with offices in The Netherlands and conducting business in California through its agents and its parent company, Ross Systems

## JURISDICTION

4. This Court has original and exclusive jurisdiction over this action for copyright infringement pursuant to 28 U S C §§1331, 1332 and 1338

5. This Court has supplemental jurisdiction pursuant to 28 U S C §1367 over plaintiff's claims for misappropriation of trade secrets and unfair competition in that said claims are so related to plaintiff's claim for copyright infringement that they form part of the same case or controversy under Article III of the United States Constitution

## VENUE

6. Venue is appropriate pursuant to 28 U S C §1400 as this is a civil action arising under an Act of Congress relating to copyrights, and this is the district in which defendants or their agents reside or may be found

## INTRADISTRICT ASSIGNMENT

7. This is an intellectual property matter exempted from intradistrict assignment under Local Rule 3-2(c)

## GENERAL ALLEGATIONS

8. Herkemij owns Benelux copyright registration number 0 568 046 for the Project Administration and Control System ("PACS") software, which registration was issued on

January 3, 1996

9   PACS, formerly known as PCS and MPA, is a software program for use in administering and controlling projects   Herkemij, through its licensee Herkemij & Partners Software Engineering B V ("Herkemij Software"), developed the PACS software over the course of eight years using a substantial number of programmers and developers

10   Ross Systems owns a software program formerly known as Renaissance CS ("RenCS"), which is an Enterprise Resource Planning system ("ERP-system") that allows users to run processes, such as production, logistics, sales and ordering, and financial administration   As initially configured by Ross Systems, RenCS software lacked the functions PCS had to administer projects.

11   In early 1993, the Dutch Research Facility of the Dutch Ministry of Agriculture, called Dienst Landbouwkundig Onderzoek ("DLO"), was considering the purchase of a new combined financial and project management software system

12. In mid-1993, Ross Nederland approached Herkemij Software to create a link between PCS and RenCS for the DLO project because the RenCS software lacked the PCS features and functions to administer projects

13   In late 1993, Herkemij Software and Ross Nederland entered into discussions regarding linking Herkemij's PCS software with the RenCS software   However, RenCS was developed in Gembase, the proprietary development language tool of Ross Systems, and PCS was developed in Dataflex and the computer language C++   As such, the two software programs had a totally different look and feel to the user (input screens, output screens, reports, etc )

14   DLO required that the PCS software have the same look and feel of the financial modules of the RenCS software and interface with the General Ledger of the RenCS software   As such, Herkemij Software redeveloped and enhanced the PCS software in Gembase   The redeveloped and enhanced version of PCS was called Module Projection Administratie ("MPA")

15  D E de Haan was an employee of Herkemij and part of the development team for PCS and MPA  The employment agreement with de Haan contained a provision that former employees could not work on the development of a project management tool for at least two years after leaving the employment of Herkemij  Further, de Haan's employment agreement strictly prohibited him from taking design documents, source code and other proprietary information of Herkemij related to the PCS and MPA software after termination of his employment

16  During his employment with Herkemij, de Haan had full access to the offices of Herkemij and to the computers/servers on which PCS and MPA were developed

17  On or about February 22, 1994, Herkemij Software and Ross Nederland entered into a written Cooperation Agreement  Pursuant to the Cooperation Agreement, Herkemij retained exclusive rights in and to the Intellectual Property (as defined in the Cooperation Agreement) in the MPA software and any additions, enhancements and/or modified versions thereof, including, but not limited to, copyrights and trade secrets  These rights included Herkemij's creation of programs in Gembase, and any specifications, analysis documents, functional and technical designs, manuals, documentation (sales and otherwise) and reports related and/or containing referrals to the MPA software and the additions, enhancements and modified versions thereof and thereto

18. Since the use of the acronym MPA did not make sense for international marketing purposes, Herkemij renamed MPA to PACS (Project Administration and Control System) in 1994

19  In early 1995, Herkemij Software completed the redevelopment and enhancement of the first version of PACS in Gembase, and the integrated PACS and RenCS suite was implemented with DLO

20  In early 1995, de Haan left the employment of Herkemij

21  On February 1, 1995, de Haan took a job with a customer of Ross Nederland  After an initial employment period of one to two years with a customer of Ross Nederland, de Haan was hired by Ross Nederland

22. In 1995 and 1996, Ross Nederland did not meet the requirements of the Cooperation Agreement to use its best efforts to distribute and sell PACS, and, as a result, Herkemij terminated the Cooperation Agreement effective December 31, 1996.

23. Since Herkemij was (and is) the owner of the intellectual property rights to PACS, and since Ross Systems did not have the rights to develop, enhance or maintain the PACS software, DLO was not comfortable with the termination of the Cooperation Agreement because Ross Nederland could no longer fulfill all its obligations to DLO with respect to the PACS software

24. To accommodate DLO, Ross Systems approached Herkemij in early 1997 to negotiate a new agreement to distribute PACS worldwide, provided that Herkemij would (i) keep servicing Ross's existing customers using PACS pursuant to the same terms as the Cooperation Agreement until such time as a new agreement was executed, and (ii) obtain certification from the quality assurance department of Ross Systems of the current integration between PACS and the General Ledger of RenCS

25. On or about June 12, 1997, Ross Systems' quality assurance department in Redwood City, California conducted extensive testing on the PACS software program to ensure that PACS and the General Ledger of RenCS worked together

26. On or about June 30, 1998, Herkemij Software and Ross Systems entered into a written Distributor Agreement All subsidiaries of Ross Systems were included in the Distributor Agreement

27. In 1999, de Haan was promoted to general manager of Ross Nederland

28. In April of 2001, Ross Nederland sent an invitation to all of its customers, including those that used the PACS software, for a marketing event to be held on May 10, 2001 called "Ross User Conference for the Benelux". The invitation stated that Ross Nederland wanted to show its customers the latest developments regarding iRenaissance (the current name of RenCS), including the proposed development of new project administration software

29. On May 10, 2001, Ross Nederland held its Ross User Conference in the Benelux

(Netherlands, Belgium and Luxembourg) At the Ross User Conference, de Haan presented the outlay of iProject, Ross Systems' proposed project administration software, to the collected users located in the Benelux and Germany. The screens that de Haan used in his PowerPoint presentation were copies of screens of a prior copyrighted version of the PACS software developed and owned by Herkemij. De Haan told the assembled customers that Ross Systems and Ross Nederland would develop a new project management software module that would be integrated in the various financial software programs based on the requirements of its customers, and that the new version would be available within six to eight months. Attending de Haan's presentation were the Vice President of Sales and other management personnel of Ross Systems, and the Vice President of Ross Europe.

30. De Haan worked on the development of iProject at Ross Systems' development centers in the Netherlands and the United States using the documentation and source code of the copyrighted PACS software that he had obtained while employed with Herkemij.

31. On or about August 22, 2001, Herkemij Software filed a Request for Arbitration with the International Chamber of Commerce ("ICC") to enforce the provisions of the Distributor Agreement against Ross Systems. On or around November 12, 2003, the ICC ruled that Ross Systems breached the Distribution Agreement with Herkemij Software, and ordered Ross Systems to pay $2 million in outstanding invoices owed to Herkemij.

32. In June 2003, the first version of Ross Systems' iProject software was tested in a pilot project at the Ministry of Agriculture in The Netherlands and at Water Utility, a part of the City of Amsterdam.

33. By reason of defendants' acts, plaintiff has suffered and will continue to suffer damages to its business, reputation and goodwill, and the loss of sales and profits which plaintiff would have realized but for defendants' acts. Unless restrained and enjoined, defendants will continue to engage in the acts complained of herein and will irreparably damage plaintiff. Plaintiff's remedy at law is not adequate to compensate plaintiff for all the injuries resulting from defendants' actions.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement under 15 U.S.C. §101 et seq.)

34  Herkemij realleges the allegations set forth in Paragraphs 1 through 33

35  Herkemij's copyright registration is prima facie evidence of ownership and is enforceable in the United States through the Berne Convention and the Universal Copyright Convention ("UCC")

36  Herkemij's copyrighted PACS software is original, and the copyright registration is prima facie evidence of originality

37  The PACS software is made up of several different components, including, but not limited to, the source and object code, the structure, sequence and/or organization of the program, the user interface, and the function, or purpose, of the program  These components of the PACS software constitute the expression of ideas which are protected by copyright

38  Defendants copied Herkemij's expression of the ideas contained in the copyrighted PACS software to create Defendants' iProject project management module

39  Defendants created an unauthorized derivative work of Herkemij's copyrighted PACS software through Defendants' iProject software

40  At no time did plaintiff authorize defendants to reproduce, adapt, or distribute iProject or any related new program

41  There is substantial similarity between Herkemij's copyrighted PACS software and Defendants' iProject software

42  Defendants had access to Herkemij's copyrighted PACS software through Herkemij's former employee, D E  de Haan, and the versions of PACS that were provided to Ross Nederland and Ross Systems as part of the Cooperation Agreement and the Distributor Agreement.  De Haan and Ross Systems engineers worked on the development of iProject at Ross Systems' development facilities in the Netherlands and the United States using the documentation and source code from the copyrighted PACS software.

43 As a result of the conduct of Defendants, Herkemij is entitled to an injunction pursuant to 17 U S C §502, restraining and enjoining Defendants, their agents, and all persons acting in concert or participation with them from offering to sell, marketing, selling, distributing or using the infringing products Unless enjoined and restrained, defendants' conduct threatens to further infringe plaintiff's copyright interests

44 As a result of the conduct of Defendants, Herkemij is entitled to impoundment and destruction of Defendants' infringing products pursuant to 17 U S C §503

45 As a result of the conduct of Defendants, Herkemij is entitled to the actual damages suffered by Herkemij as a result of the infringement and any profits of Defendants attributable to the infringement in the amount of $2 5 to $5 million, or in an amount to be proven at trial, pursuant to 17 U S C §504

46 As a result of the conduct of Defendants, Herkemij is entitled to statutory damages for willful infringement pursuant to 17 U S C §504 (c)(2)

47 As a result of the conduct of Defendants, Herkemij is entitled to its reasonable attorneys' fees, expenses and court costs related to this suit pursuant to 17 U S C §505 Herkemij has incurred and will continue to incur reasonable attorneys' fees and costs

## SECOND CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets under Cal. Civ. Code § 3426)**

48 Herkemij realleges the allegations set forth in Paragraphs 1 through 47

49 Herkemij's programs, methods, techniques and processes relating to the development, implementation and maintenance of the PACS software derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and are the subject of reasonable efforts to maintain their secrecy

50 Herkemij's efforts to maintain the secrecy of its programs, methods, techniques and processes relating to the development, implementation and maintenance of the PACS software include, but are not limited to, confidentiality agreements; prohibiting employees from taking design documents, source code and other proprietary information related to the

PACS software after termination of employment, and allowing only employees of Herkemij to implement and maintain the PACS software

51 Defendants misappropriated Herkemij's trade secrets relating to the PACS software as follows

 (a) Defendants acquired Herkemij's trade secrets through the versions of PACS that were provided to Ross Nederland and Ross Systems as part of the Cooperation agreement and the Distribution Agreement and through Herkemij's former employee, D E de Haan, and Defendants knew or had reason to know that the trade secrets were acquired by improper means or for an improper purpose,

 (b) Defendants used Herkemij's trade secrets, which were acquired through improper means, in development of their iProject software without express or implied consent from Herkemij;

 (c) A the time of such use, Defendants knew or had reason to know that the knowledge of the trade secrets was

  (i) Derived from or through a person who had used improper means to acquire it,

  (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, and

  (iii) Derived from or through a person who owed a duty to Herkemij to maintain its secrecy or limit its use

52 Defendants have been unjustly enriched by the improper appropriation, use and/or disclosure of Herkemij's trade secrets.

53 As a result of the conduct of Defendants, Herkemij is entitled to injunctive relief pursuant to Cal Civ Code § 3426 2, restraining and enjoining Defendants, their agents, and all persons acting in concert or participation with them from offering to sell, marketing, selling, distributing or using Herkemij's trade secrets  Unless enjoined and restrained, defendants' conduct threatens to further misappropriate, use or disclose Herkemij's trade

secrets

54. As a result of the conduct of Defendants, Herkemij is entitled to the actual loss caused by Defendants' misappropriation, and the unjust enrichment caused by Defendants' misappropriation that is not taken into account in computing damages for actual loss, in the amount of $2.5 to $5 million, or in an amount to be proven at trial, pursuant to Cal. Civ. Code § 3426.3 (a).

55. As a result of the conduct of Defendants, Herkemij is entitled to payment of a reasonable royalty pursuant to Cal. Civ. Code § 3426.3(b).

56. As a result of Defendants' willful or malicious misappropriation of Herkemij's trade secrets, Herkemij is entitled to an award of exemplary damages in an amount of twice any award made pursuant to Paragraphs 54 or 55, pursuant to Cal. Civ. Code § 3426.3 (c).

57. As a result of Defendants' willful or malicious misappropriation of Herkemij's trade secrets, Herkemij is entitled to an award of its reasonable attorneys' fees pursuant to Cal. Civ. Code § 3426.4.

### THIRD CLAIM FOR RELIEF
**(Unfair Competition In Violation Of California Business & Professions Code § 17200)**

58. Herkemij realleges the allegations set forth in Paragraphs 1 through 57.

59. Defendants' acts constitute unlawful, unfair or fraudulent business acts and practices and/or unfair, deceptive, untrue or misleading advertising within the meaning of California Business & Professions Code § 17200 et seq.

60. Pursuant to California Business and Professions Code Section 17203, plaintiff is entitled to an order restraining and enjoining Defendants, their agents, and all persons acting in concert with them from offering to sell, marketing, selling or distributing their products by means of such acts or practices, or such advertising.

61. Pursuant to California Business & Professions Code s 17203, Plaintiff also is entitled to restitution of the amounts derived by Defendants as a result of the unlawful, unfair, and misleading business acts and practices described herein.

62. The amount of profits Defendants derived as a result of their unlawful, unfair and

misleading business acts and practices, or their unfair, deceptive, untrue or misleading advertising, is unknown to Herkemij and cannot be ascertained without an accounting, pursuant to California Business & Professions Code § 17203

**WHEREFORE**, Herkemij requests relief as follows

1. For injunctive relief pursuant to 17 U.S.C. §502, restraining and enjoining Defendants, their agents, and all persons acting in concert with them from offering to sell, marketing, selling, distributing or using the infringing products;

2. For impoundment and destruction of Defendants' infringing products pursuant to 17 U.S.C. §503,

3. For actual damages suffered by Herkemij as a result of the infringement and any profits of Defendants that are attributable to the infringement in the amount of $2.5 to $5 million, or in an amount to be proven at trial, pursuant to 17 U.S.C. §504,

4. For statutory damages for willful infringement pursuant to 17 U.S.C. §504 (c)(2),

5. For injunctive relief pursuant to Cal. Civ. Code § 3426.2, restraining and enjoining Defendants, their agents, and all persons acting in concert or participation with them from offering to sell, marketing, selling, distributing or using the infringing products,

6. For loss caused by Defendants' misappropriation, and the unjust enrichment caused by Defendants' misappropriation that is not taken into account in computing damages for actual loss, in the amount of $2.5 to $5 million or in an amount to be proven at trial, pursuant to Cal. Civ. Code § 3426.3 (a),

7. For payment of a reasonable royalty pursuant to Cal. Civ. Code § 3426.3 (b)

8. For exemplary damages pursuant to Cal. Civ. Code § 3426.3 (c) in an amount of twice any award made pursuant to Cal. Civ. Code § 3426.3 (a) or (b),

9. For Herkemij's attorneys fees, costs and disbursements; and

10. For such other relief as the court may deem equitable

//
//

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, AND UNFAIR COMPETITION

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 3-6 (a).

DATED: April 27, 2004

SCHWABE, WILLIAMSON & WYATT, P.C.
MARK LE COQ
PATCHEN M. HAGGERTY

By: _____
Patchen M. Haggerty

Attorneys for Plaintiff

DATED: April 26, 2004

COOPER, WHITE & COOPER LLP
ROBERT A. PADWAY
MARCY J. BERGMAN
CYRUS WADIA

By: _____
Cyrus Wadia

Attorneys for Plaintiff

495222 1